CAIN'S COFFEE CO., a Corporation,
Plaintiff in Error,

v.

Mack McNUTT, Defendant in Error.

No. 37507.

Supreme Court of Oklahoma.

March 19, 1957.

John W. Swinford, Oklahoma City, for plaintiff in error.

James E. Grigsby and Schwoerke & Schwoerke, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

The present action was instituted by defendant in error, as plaintiff, to recover from plaintiff in error, his former employer, as defendant, a sum of money the latter allegedly owed him as a "Christmas bonus". Our continued reference to the parties will be by their trial court designations.

Since 1942, in which year its "profit structure" would not justify it, the defendant company has paid its employees, in addition to their regular remuneration for services rendered, an extra stipend called a "Christmas bonus", in December, or about Christmas time, each year. Said bonus has generally amounted to approximately one-twelfth of the total salary and/or commissions the employees earned during the previous fiscal year. Plaintiff was employed by defendant as a salesman for its products in April, 1952, and was discharged from its employ in October, 1955. Not being among those receiving a bonus from defendant in December of the latter year, plaintiff instituted the present action in February, 1956, to recover from defendant, as such bonus, a sum equivalent to $\frac{1}{12}$th of the commissions he earned, and was paid, during the company's previous fiscal year from July 1, 1954, to July 1, 1955. The asserted basis for his recovery was contractual, it being his theory that defendant became bound to pay him a Christmas bonus each fiscal year of his employment by it, under an oral agreement it made with him through its Executive Vice-President, Mr. Durland, at the time he was originally employed by it in April, 1952.

Defendant took the position that the Christmas bonus awarded its employees was

in the nature of a gratuity, which it, under no circumstances, was ever obliged to pay. It specifically denied that Mr. Durland, or any other of defendant's authorized officials or employees had promised plaintiff, when he became employed, or at any other time, that he would be paid a Christmas bonus in 1955; and further asserted that such a bonus had never been intended to be paid, or had been paid, in December of any year, except to those who were *then* in the company's employ. Defendant further alleged that plaintiff's discharge in October of 1955, was by reason of his own wrongful acts in overcharging certain of its customers, "and other misconduct."

At the trial it was agreed that defendant paid plaintiff (by the month) the total sum of $8,348.13, in commissions on the sale of its products he effected during the company's fiscal year, July 1, 1954, to July 1, 1955, and that if he had been paid a Christmas, 1955, bonus, in accord with the bonus paid its other "regular employees" that Christmas, said bonus would have amounted to 1/12th of $8,348.13, or $695.37. Defendant introduced oral and documentary evidence tending to show that the amount of money it had allocated, or set aside, each year since 1942, for payment of the Christmas bonus depended upon its earnings the previous fiscal year, and that whether or not, during the next Christmas season of any given year, it would pay one, and, if so, how much, was never determined until after the close of said fiscal year, when its Board of Directors determined both questions and passed a resolution setting aside, from its earnings for that past fiscal year, a certain amount of money for that purpose. The Board's resolution concerning the Christmas bonus of 1955, passed at its meeting in August of that year, read as follows:

"Resolved, that the sum of $56,849.59 be and· is hereby approved for payment to all employees of the Company, other than members of the executive committee, and other than the Chairman. of the Board of Directors, said payment to be made on or about Christ-

mas, 1955, and that said allocation of the above sum shall be *within the discretion* of the officers of the company." (Emphasis ours.)

Mr. Durland, in testifying as a witness for defendant, denied emphatically that when he talked to plaintiff in April, 1952, about going to work for the company, the matter of a Christmas bonus was discussed, in addition to the regular remuneration that would be paid him. The material essence of plaintiff's version of his conversation with Durland was elicited from him on direct examination as follows:

"Q. Was there any mention about bonus? A. A bonus; yes, and at the time he told me what the commission would be on how much we made, and then at the end of every fiscal year, why what we had made that year from there back, we were given a bonus of approximately one month's pay. It varied from time to time but it stayed pretty close. *We could almost count on* exactly a month's pay that would be given to you just before Christmas to be used as Christmas money, and that, I believe was given to everyone in the place. I know that it was given to all of the salesmen. That was our agreement between Mr. Durland and I."

On cross examination, plaintiff testified as follows:

"Q. You have no reason to believe, and you don't believe that Cain's Coffee Company ever promised to pay or does pay an employee a Christmas bonus who is not employed by the Company at Christmas time? A. It wasn't stipulated to me that way, no sir.

\* \* \* \* \* . \* \*

"Q. All right, could you count on it or could you almost count on it?

\* \* \* \* \* \* \*

"A. We agreed that we could count on the bonus, but the amount would vary slightly from a month's pay."

According to defendant's evidence, the Fall season is the period of its largest sales

volume, and likewise its salesmen's largest commissions, of each year; and, its Christmas bonus system, not only reduces its profits for tax purposes, but offers its salesmen an inducement to remain in its employ from one Fall, through the duller seasons, until the next Fall.

After the introduction of plaintiff's evidence, defendant demurred thereto, and, at the close of the evidence it moved for a directed verdict. The trial court overruled both the demurrer and motion, and submitted the cause to the jury, which returned a verdict for plaintiff in the aforementioned amount of $695.67, with interest from January 1, 1956. Judgment was entered accordingly. After the overruling of its motion for a new trial, defendant perfected the present appeal.

The first proposition defendant urges for reversal refers to the trial court's alleged error in overruling its motion for a directed verdict; and asserts that the evidence was insufficient to sustain the verdict and judgment. The general tenor of its argument is that, assuming, according to plaintiff's testimony, that Mr. Durland did promise him that during his employment with the defendant company, he would participate in the Christmas bonus paid its employees out of its earnings the previous fiscal year, neither the evidence, nor the inferences therefrom most favorable to plaintiff, tends to show that, under said agreement, he would be paid such a bonus in December, or at Christmas time, of any year when he was no longer an employee of the company. As hereinbefore indicated, one of defendant's asserted defenses was that no one, in contravention of the company's policy, ever promised plaintiff he would be paid a bonus at Christmas time in 1955, *if he was no longer employed by the company.* Defendant's evidence all supported this contention, and plaintiff's evidence does not refute it. We have quoted from his own testimony that portion of plaintiff's evidence most favorable to him, as well as his own denial, on cross examination, that he was ever led to believe, or did believe from any promise made to

him, that any employee who had not remained in defendant's employ until Christmas would be paid a Christmas bonus, like those who had. In view of the latter's admission, the term "we" in plaintiff's statement which followed it, in the above-quoted excerpt from his testimony, can only be regarded as referring to "we employees", and the statement interpreted as follows: "We (Mr. Durland and I) agreed that we (employees) could count on the bonus * * *". Incidentally, the question of whether any one ever promised plaintiff he would receive a bonus at any Christmas *whether he was then employed by defendant or not,* (which defendant, in its second proposition, contends was a fundamental issue in the case) was never directly or specifically submitted to, or determined by, the jury. And, since, as we view it, plaintiff's evidence did not dispute defendant's contention on that point, there was no issue joinder on it. With that defense undenied, there was no conflict in the evidence to be resolved, or question to be decided, by the jury. The court should have sustained defendant's motion for a directed verdict. Plaintiff never contended, nor attempted to prove, that under the terms of his oral contract of employment with defendant, either party could not terminate said contract at will, or whim, and without notice. Nor was there any contention made, or supported that defendant defrauded him, or acted in bad faith, or to avoid paying him the Christmas bonus, when it discharged him approximately two months before Christmas. Therefore, the considerable volume of evidence defendant introduced to show that plaintiff's discharge was with good cause, rather than without cause, was immaterial.

Upholding defendant's first proposition renders it unnecessary to pass on its second one.

The judgment is reversed with directions to the trial court to set it aside and enter judgment for the defendant.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.