[No. 518-3.    Division Three.    January 30, 1973.]

KENT D. SIMON, *Respondent and Cross-appellant,* v. RIBLET TRAMWAY CO., *Appellant.*

GREEN, C.J., concurs by separate opinion.

*Riner E. Deglow,* for appellant.

*Wm. F. Nielsen* (of *Hamblen, Gilbert & Brooke*), for respondent.

MUNSON, J.—Defendant Riblet Tramway Co. appeals from a judgment for plaintiff, Kent D. Simon, for unpaid compensation; plaintiff cross-appeals from a denial of his claim for double damages and attorney's fees. Defendant Tony Sowder was dismissed from this action and no appeal is taken therefrom.

The primary issue on appeal is whether the payment of a "bonus" over a 10-year period can ripen into an implied contract for compensation where the amount thereof is discretionary with the employer, not negotiated by the employee and independent of the profits of the employer. Relying upon *Powell v. Republic Creosoting Co.,* 172 Wash. 155, 19 P.2d 919 (1933) the trial court answered in the affirmative. We agree.

Plaintiff was employed as an engineer by defendant company from May 1959 until June 1969. His total compensation each year included a monthly salary, a substantial "bonus" at the end of each year, and a sum contributed to an employee profit-sharing trust. The total compensation increased steadily from $3,559.38 in 1959 to $17,087.02 in 1968. The year-end "bonus" was paid to plaintiff each year of his employment and increased from $500 in 1959 to

$6,000 in 1967 and 1968.[1] Neither the dollar amount of the bonus paid plaintiff, nor the total amount of his compensation ever decreased from one year to the next. The bonus amounted to approximately 16 percent of plaintiff's annual salary for 1959 and increased to 68 percent thereof in 1968.

Plaintiff voluntarily terminated his employment in June 1969. At that time he requested a pro rata share of his 1969 year-end bonus. Using the previous 2 years' bonuses ($6,000) as a base, he requested 5/12ths thereof, or $2,500. Defendant denied the request, claiming the lump sum payment was a true bonus, *i.e.,* completely discretionary, paid only to employees meriting a bonus, and when the company profit allowed for such a payment. Upon denial of his claim, plaintiff instituted this action.

The trial court found at the time plaintiff terminated his employment he was in good standing with defendant, there had never been a discussion between the parties with regard to the bonus, and there was no relation between profitability of defendant and the payment of any bonus. There was no contention or evidence that defendant was financially unable to pay 1969 bonuses; in fact, most other employees of defendant received larger bonuses in 1969 than they had in 1968. It was also found that plaintiff's annual salary alone ($8,858.28 in 1968), without the annual lump sum payment, was inadequate compensation for an engineer with plaintiff's training and experience. The court then granted plaintiff judgment for $2,500 concluding:

'As a result of the course of dealing between the plaintiff and the defendant corporation through the years 1959

[1] The trial court found plaintiff received the following compensation as year-end salary, bonus and profit sharing:

| Year | Salary | Bonus | Profit Sharing | Year | Salary | Bonus | Profit Sharing |
|------|--------|-------|----------------|------|--------|-------|----------------|
| 1959 | $3,059.38 | $ 500 | | 1964 | $6,038.29 | $2,125 | $1,224.49 |
| 1960 | 5,126.41 | 1,000 | $ 918.96 | 1965 | 7,650.00 | 3,000 | 1,597.50 |
| 1961 | 5,590.54 | 1,250 | 1,026.08 | 1966 | 8,615.00 | 4,500 | 1,967.25 |
| 1962 | 6,128.23 | 1,875 | 1,200.48 | 1967 | 8,739.44 | 6,000 | 2,210.92 |
| 1963 | 6,219.95 | 1,875 | 1,214.24 | 1968 | 8,858.28 | 6,000 | 2,228.74 |
| | | | | 1969 | 4,367.68 | | |

to 1969 as to the method of compensation, the Court finds that there developed an implied agreement that the plaintiff's annual salary should be at least as great as the monthly compensation plus the annual lump-sum payment as received in each prior year taking into account the employer's contribution to the employee's profit-sharing trust, and that the regular monthly compensation without the annual lump-sum payment is inadequate compensation in view of the plaintiff's education, experience, professional license and expertise as a specialist.

Plaintiff, as well as the trial court, relied primarily upon *Powell v. Republic Creosoting Co., supra,* an en banc decision.

In *Powell,* an engineer was sent to Seattle in 1916 to manage defendant's business. He was paid a set salary each year and a bonus payment at the end of the year. His annual compensation increased substantially, and with some regularity, mostly because of the bonus payments. The bonus itself increased each year and rose from approximately 25 percent to 63 percent of his stated yearly salary. Upon resigning in 1930, plaintiff brought suit for his bonus for the part of 1930 he had actually worked. In affirming judgment for plaintiff, the Supreme Court stated, at page 158:

> In the beginning, the payment of $50, the bonus for the year 1916, may have been a gratuity only. Possibly the two succeeding years, when the bonus payments were $200 and $400 respectively, show nothing more than gratuities, but the eight years following, with substantial payments regularly made and regularly increasing, would seem to be something quite other than mere gifts, and to our minds this course of dealing suggests rather conclusively an implied agreement that respondent's annual salary should be the stated amount payable semi-monthly plus such additional sum as would be reasonable in the light of the services rendered for the particular year and the results accomplished thereby.

The *Powell* case and the instant case are factually very similar. The slight differences between the two cases, including the fact that plaintiff in *Powell* was a manager and

plaintiff herein was not, do not make the two cases distinguishable. The bonuses paid plaintiff were "substantial payments regularly made and regularly increasing". For instance, in 1968 plaintiff's salary was $8,858.28 and his bonus for that year was $6,000. The findings of fact herein are supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Consequently, following *Powell,* we affirm the judgment for plaintiff upon the theory that the parties had an implied agreement to pay a bonus as part of plaintiff's earned compensation.

Plaintiff also sought judgment for twice the amount of wages withheld, costs of suit, and reasonable attorney's fees, pursuant to RCW 49.52.050(2) and .070, alleging defendant willfully withheld his wages. The trial court denied plaintiff's claim upon the basis that defendant did not willfully intend to deprive plaintiff of his wages. We agree. RCW 49.52.050(2) and .070 are not meant to apply to this factual situation; herein, there was a bona fide disagreement between employer and employee with regard to whether a year-end payment was earned wages or merely a discretionary bonus. This situation evidences no intentional deprivation of wages as required to sustain a claim under RCW 49.52.050.

Defendant contends that even if plaintiff was found to be entitled to payment for the so-called bonus, he should be deemed to have waived $1,000 of the requested amount. Plaintiff was informed in April 1969 that the bonus would not be paid and his continued employment until June 1969 estopped him from claiming any pro rata portion of the bonus for that period of time. We find no merit to this contention. Although the trial court did not specifically enter findings or conclusions on this issue, implicitly the court rejected this claim by entering full judgment for plaintiff. *See DeCoria v. Red's Trailer Mart, Inc.,* 5 Wn. App. 892, 491 P.2d 241 (1971); *Ingle v. Ingle,* 183 Wash. 234, 48 P.2d 576 (1935). The trial court found the bonus pay-

ment to be in actuality earned compensation. One cannot be held to waive what is later determined to be earned compensation merely by being put on notice that the employer does not consider the payment in question to be that type of compensation. The later determination that the payment was earned establishes plaintiff's right thereto.

Defendant also contends the court erred in admitting into evidence an income and salary survey of professional engineers prepared by the National Society of Professional Engineers. We disagree. The survey of engineers' salaries was undoubtedly hearsay. However, the survey was relevant to the issues raised. The data presented therein, being a broad gathering of engineers' salaries, would have been difficult to present by individual testimony. Furthermore, the survey appears trustworthy and reliable, published by a reputable society, and without any apparent reason to falsify it. It has relevancy to one of plaintiff's contentions. Consequently, the survey was admissible. *See Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969); *see also Raybell v. State,* 6 Wn. App. 795, 805, 496 P.2d 559 (1972); *Thorpe v. Boeing Co.,* 5 Wn. App. 706, 709, 490 P.2d 448 (1971). Defendant's contentions that the survey did not cover salaries in the Spokane area specifically, that it was produced by a lobby group and that the sample of engineers covered by the survey was small, go to the weight to be given to this evidence by the trier of fact, not to its admissibility. We note there was other testimony pertaining to engineers' salaries within the Spokane area.

Defendant cross claimed, asking for a setoff for alleged overpayment of vacation pay, and now appeals from the failure of the trial court to grant judgment in its favor for the requested amount. Defendant alleges plaintiff took his entire vacation for 1969 before he terminated his employment in June, that plaintiff's failure to work the full year nullified his right to full vacation pay and that, as a consequence, plaintiff should be required to repay a $224.97 vacation overpayment. The trial court did not enter any find-

ings or conclusions with respect to vacation pay. We may assume; however, the trial court found adversely to defendant, the party with the burden of proof on this issue, by entering judgment for plaintiff in the amount of $2,500, the full requested sum. *DeCoria v. Red's Trailer Mart, Inc., supra; Ingle v. Ingle, supra.* The record on appeal is devoid of any evidence indicating plaintiff was paid this amount as vacation pay, or indicating company policy or custom requiring a full year of work as a requirement for allowance of vacation for that year. Consequently, defendant did not fulfill his burden of proving the claim for judgment for vacation overpayment and the court was correct in not so allowing.

Judgment affirmed.

McINTURFF, J., concurs.

GREEN, C.J. (concurring)—I concur in the foregoing opinion because of *Powell v. Republic Creosoting Co.,* 172 Wash. 155, 19 P.2d 919 (1933), and because the year-end payments were disproportionately large in relation to base salary. This decision should be carefully limited to its facts.

Petition for rehearing denied February 20, 1973.

Review denied by Supreme Court May 1, 1973.