[No. 11910–9–I.   Division One.   May 9, 1985.]

LOU M. HYATT, *Appellant,* v. SELLEN CONSTRUCTION
COMPANY, INC., *Respondent.*

*Jerald D. Pearson,* for appellant.

*Laura M. Murphy,* for respondent.

WEBSTER, J.—Plaintiff Lou M. Hyatt, an employee of
subcontractor Fischbach and Moore, Inc., sued defendant
Sellen Construction Co., Inc., general contractor, for per-
sonal injuries he sustained in a fall at a construction site
owned by The Boeing Aircraft Company. The jury returned
a verdict for the defendant. Hyatt appeals, claiming that it

was error for the trial court to (1) refuse plaintiff's instruction on the duty of a general contractor at a multi-employer construction site, (2) refuse to instruct the jury that a violation of Washington regulations on "floor openings" was negligence per se, and (3) exclude portions of the expert testimony offered by the plaintiff's witness. We affirm.

Defendant Sellen Construction Co., Inc., entered into a construction contract with the Boeing Company. Sellen subcontracted the electrical work to Fischbach and Moore, who employed plaintiff Hyatt as part of its electrical crew.

Hyatt's crew and crews from different subcontractors worked in the same area, although usually at different times. The work area was a large room with a concrete floor furrowed with utility trenches. The trenches were fitted with metal plates which, when installed, were flush with the floor. Employees removed these covers when they had to work in the trenches.

The plaintiff testified that the workers would rope off trenches if they had to leave them open. He also testified that two Sellen supervisors circulated through the construction site and that Sellen had on occasion barricaded holes at the site.

On the day of the accident, Hyatt was working in an overhead penthouse. At about 10:15 a.m., he walked over the concrete floor on his way back from a coffee break and noticed that a trench, into which he later fell, was closed. He returned to the penthouse but 20 minutes later took the scissors lift back down to the floor. While he was on the lift, a co-worker yelled from above to him that a cord was "hung up". He stepped off the lift when it reached the floor, and tried to whip the cord loose. As he did this, he took a few steps backward, fell into an open, unbarricaded trench and was injured. It was never established at trial who had uncovered the trench.

The first issue on appeal is whether the trial court erred in rejecting the plaintiff's instruction on the duty of a general contractor at a multi-employer construction site.

Certain principles are applicable when reviewing a claimed error in instructions:

> It is well established that instructions must be considered in their entirety. . . . The wording of an instruction is within the court's discretion and an instruction may be refused even though it correctly states the law. . . . Instructions are sufficient if they (1) permit each party to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law.

(Citations omitted.) *Braxton v. Rotec Indus., Inc.*, 30 Wn. App. 221, 224–25, 633 P.2d 897 (1981).

The plaintiff offered the following instruction, which was refused:

> If you find that plaintiff was injured in an area in which several contractors had worked within a short period of time, and if you find that Sellen had supervisory and coordinating authority over them all, then Sellen had a duty to see that proper safety precautions were taken in that area to provide the employees with a safe place of work.

Hyatt based his proposed instruction on the case of *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978). In *Kelley*, the court held that a general contractor who controls common work areas has a duty, within the scope of his control, to provide a safe place of work and to ensure that safety regulations are followed. *Kelley v. Howard S. Wright Constr. Co., supra* at 330, 334. Plaintiff's proposed instruction is a proper statement of the court's holding. However, the trial court gave an instruction which is also a proper statement of that holding:

> If you find that the defendant retained the right to control part or all the work at the construction site, then the defendant had a duty, within the scope of that control, to provide a safe place of work for the plaintiff.

Because it mentions the important principle of control, the court's instruction was adequate, when considered with the other instructions, to permit the plaintiff to argue his theory of the case. Where the court's instructions are suffi-

cient, a party is not entitled to any particular wording. *Braxton v. Rotec Indus., Inc., supra.*

The second issue is whether a general contractor may be held strictly liable for a subcontractor's employee's injuries resulting from a violation of WAC 296–155–505.

The plaintiff failed to prove Sellen's negligence to the satisfaction of the jury. Hyatt now contends the jury should have been instructed that a violation of WAC 296–155–505 is negligence per se. Since at trial there was no showing that Sellen had removed the cover and failed to barricade the trench or that Sellen knew or should have known of the open trench and failed to take measures to barricade it,[1] the refusal of this instruction is only prejudicial if Sellen may be held strictly liable for a violation of the regulation.

Plaintiff offered an instruction patterned after WAC 296–155–505,[2] which reads in part as follows:

(1) General provisions. This part shall apply to temporary or emergency conditions where there is danger of employees or materials falling through floor, roof, or wall openings, or from stairways or runways.
(2) Guarding of floor openings and floor holes.
(a) Floor openings shall be guarded by a standard railing and toe boards or cover, as specified in subsection (6) of this section. In general, the railing shall be provided on all exposed sides, except at entrances to stairways.
. . .

. . .
(g) Temporary floor openings shall have standard railings.

WAC 296–155–500(4) defines "floor opening":

---

[1] The defendant asserts there was no such showing, the plaintiff does not dispute this assertion, and there is nothing on the record before us showing that the defendant was negligent.

[2] Hyatt assigned error to the court's refusal of an instruction based on this regulation. The actual instruction is not included in the Clerk's Papers or record before us. However, since respondent does not deny that such an instruction was offered, we will assume that it was, and that it tracked the language of the regulation.

"Floor opening" means an opening measuring 12 inches or more in its least dimension in any floor, roof, or platform, through which persons may fall.

A court may adopt a regulation as evidence of negligence per se if it was intended to protect against the type of harm from which the plaintiff suffered. *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 919, 568 P.2d 771 (1977). The trial court apparently determined that the regulation did not apply in this case. It is not clear from the partial record before us why the court made this determination, although the parties in their briefs imply that the judge was not satisfied the trenches were actually "floor openings" within the meaning of the regulation. We will not overrule the trial court on what appears to be a factual issue without the benefit of the full record.

Assuming arguendo that the plaintiff has suffered the applicable class of harm, we note the Washington court has held that regulations promulgated by the Department of Labor and Industries are designed to protect employees and that violations of such regulations may constitute negligence per se. *Bayne v. Todd Shipyards Corp., supra* at 920. The court in *Kelley v. Howard S. Wright Constr. Co., supra,* held that a violation of similar federal regulations could constitute negligence per se on the part of a general contractor. *Kelley,* at 336. However, in neither *Bayne* nor *Kelley* did the court hold that the defendant would be strictly liable for any violation of the regulation.

Absent a clear indication by the Legislature that it intended to impose strict liability, the defendant need only show reasonable diligence to obey the statute or regulation offered as evidence of negligence per se. W. Prosser & W. Keeton, *Torts* § 36, at 228 (5th ed. 1971). There is no indication in either the Washington Industrial Safety and Health Act of 1973, RCW 49.17, or the regulations themselves, that the Legislature or the Department of Labor and Industries intended to impose strict liability on general contractors.

Nor have the Washington courts indicated such an

intention. In *Kelley v. Howard S. Wright Constr. Co.,* *supra* at 332, the court held that an exception to the general rule of contractor nonliability exists where the general contractor retains control over some part of the work. *Kelley* involved the general contractor's failure to provide a safety net, as required by federal regulation, which would have prevented the plaintiff's injuries when he fell from the fourth floor of a construction project. Unlike this case, the general contractor had failed to even make the safety devices available and knew or should have known that a violation of the regulation was occurring. In a later case, the court explained that its holding in *Kelley* was "primarily" based on the fact that "Howard S. Wright, as the general contractor on a multi–employer project, retained control over the common work area and thus had the duty, within the scope of that control, to provide a safe place to work for all employees." *Tauscher v. Puget Sound Power & Light Co.,* 96 Wn.2d 274, 278, 635 P.2d 426 (1981).

In *Kelley,* the court cited with approval the case of *Funk v. General Motors Corp.,* 392 Mich. 91, 220 N.W.2d 641 (1974). The general contractor in *Funk* had actual or constructive notice of the defect in safety precautions. *Funk v. General Motors Corp.,* 220 N.W.2d at 647 n.9. The Michigan Court of Appeals has formulated the following test based on *Funk*: "[D]id the general contractor take reasonable steps to guard against readily observable, avoidable dangers?" *Erickson v. Pure Oil Corp.,* 72 Mich. App. 330, 335, 249 N.W.2d 411, 413 (1976). It is clear from this test that a showing of actual negligence is required.

We therefore hold that it was not prejudicial error to refuse an instruction on the safety regulation where the plaintiff had failed to show Sellen's actual negligence.

The third issue is whether the trial court erred in not admitting portions of proposed expert testimony.

Hyatt sought to introduce the expert testimony of Edward R. Lucero, a retired Department of Labor and Industries employee. The court ruled that Lucero could give his opinion on the industry's standard of care but

granted the defendant's motion in limine that Lucero not be allowed to testify:

(1) that statutes or regulations apply and require that a barrier have been in place; (2) that defendant was obligated to provide the barrier; (3) what the regulations or statutes mean; (4) that his interpretation of the regulations and statutes show that defendant violated the regulations and/or statutes; and (5) that plaintiff would not have fallen if barriers were in place.

A determination of the applicable law is within the province of the trial judge, not that of an expert witness. *State v. O'Connell*, 83 Wn.2d 797, 816, 523 P.2d 872 (1974). In *Everett v. Diamond*, 30 Wn. App. 787, 638 P.2d 605 (1981), Lucero gave expert testimony that certain Department of Labor and Industries regulations applied to the defendant's construction project and that the defendant had violated those standards. The court held that Lucero had testified as to conclusions of law, and that it was error under ER 704, albeit harmless error, to admit his testimony, *Everett v. Diamond, supra* at 792. The testimony Hyatt sought to introduce in this case was almost identical to that in *Everett* and was properly excluded.

Judgment affirmed.

CORBETT, C.J., and RINGOLD, J., concur.