FILED
COURT OF APPEALS
DIVISION II

2013 AUG 20 PM 12: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42944-6-II |
| Respondent, | |
| v. | |
| SHILA JEAN WYATT, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Shila J. Wyatt appeals her jury trial conviction for vehicular assault. She argues that (1) the trial court erred in refusing to redact a witness statement on a 911 tape that referred to her as a "drunk driver" arguing that this evidence was irrelevant and highly prejudicial, (2) the trial court erroneously excluded evidence that the state patrol officer who initially investigated the accident scene had concluded that she had driven negligently and had cited her for only second degree negligent driving, and (3) the State presented insufficient evidence that she committed vehicular assault. In her statement of additional grounds (SAG),[1] Wyatt asserts that the State violated her right to be free from double jeopardy by charging her twice for the same offense. Because the trial court's evidentiary rulings were not erroneous,

---

[1] RAP 10.10.

sufficient evidence supports the jury's verdict, and Wyatt's right to be free from double jeopardy was not violated, we affirm.

FACTS

On November 10, 2009, Kaylee Kinney was driving westbound on Old Highway 99 from Tenino to Grand Mound. Kinney noticed the car in front of her, a white sedan with the license plate 454WZR, was driving erratically. The white sedan drove at fluctuating speeds, repeatedly hit "sleeper bumps," and crossed the center line at least five times. Kinney followed the white sedan for approximately five and a half miles. While following the vehicle, Kinney called 911 to report the erratic driving. The 911 operator asked Kinney what she was reporting and Kinney responded that she was reporting "[a] drunk driver." Report of Proceedings (RP) (Nov. 15, 2011) at 35. Kinney also described the white sedan's erratic driving to the 911 operator. During the 911 call, Kinney reported that the white sedan pulled over near Gibson Street to let her pass.

The same night, Kris Ziesemer was riding his motorcycle eastbound on Old Highway 99. As Ziesemer approached Gibson Street he saw a car's headlights cross the center line into his lane. Ziesemer moved his motorcycle all the way to the fog line on the right. But the car traveled all the way across the eastbound lane and hit Ziesemer. Ziesemer's leg was broken.

The car that hit Ziesemer pulled to the shoulder of the westbound lane. Deputy Ryan Hoover of the Thurston County Sheriff's Office responded to the accident scene. Hoover contacted the driver of the car that hit Ziesemer and identified her as Wyatt. The car matched Kinney's earlier description of a white sedan with license plate 454WZR. Washington State Trooper Troy Orf also responded to the scene. Orf filled out a police traffic collision report.

Trooper Orf issued Wyatt a traffic infraction citation for second degree negligent driving. Wyatt contested the traffic infraction, and the Thurston County District Court dismissed the

2

second degree negligent driving infraction. On November 16, 2010, Detective Juli Gunderman of the Washington State Patrol reopened the investigation into the Ziesemer/Wyatt collision. As a result of Gunderman's investigation, the State charged Wyatt with vehicular assault.

Before trial, Wyatt filed a motion to dismiss the vehicular assault charge on double jeopardy grounds. Wyatt argued that because the original second degree negligent driving citation had been dismissed, the vehicular assault charges violated double jeopardy. The State responded that second degree negligent driving is a civil offense and that jeopardy does not attach to civil infractions. The trial court agreed that jeopardy did not attach to Wyatt's civil traffic infraction for second degree negligent driving and denied Wyatt's motion to dismiss. The matter proceeded to a jury trial.

At trial, Wyatt moved to redact Kinney's statement on the 911 recording that she was reporting "a drunk driver" as irrelevant and overly prejudicial. RP (Nov. 15, 2011) at 10. The State acknowledged that it was not charging Wyatt under the intoxication prong of the vehicular assault statute, but argued that the statement was Kinney's simultaneous characterization of the driving she was observing at the time and did not require exclusion. The trial court denied Wyatt's motion, stating that "the reference to a drunk driver when reporting erratic driving behavior is a lay way of saying this is what it appears to me." RP (Nov. 15, 2011) at 11.

Wyatt also attempted to introduce the prior traffic infraction for second degree negligent driving and Trooper Orf's opinion that Wyatt's driving was (merely) negligent. The State argued that it was inappropriate for Orf to offer a legal opinion and that the prior infraction should be similarly excluded because it was evidence of the same improper legal opinion. The trial court ruled that Orf was not permitted to testify about what traffic infraction citation he issued or his legal opinion of the nature of Wyatt's driving.

3

No. 42944-6-II

The jury found Wyatt guilty of vehicular assault. The trial court sentenced Wyatt to a standard range sentence of 61.5 months. Wyatt appeals.

ANALYSIS

911 TAPE

Wyatt argues that the trial court erred by declining to redact Kinney's statement on the 911 recording that she was reporting a drunk driver because the statement was irrelevant and prejudicial. Although reasonable minds may differ on the relevance of Kinney's recorded characterization of the erratic driving that she was reporting to 911, the trial court did not abuse its discretion by declining to redact the recorded statement. Furthermore, based on the arguments and evidence presented in this case, Kinney's recorded statement was not unduly prejudicial.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Brown*, 132 Wn.2d 529, 571-72, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds. *State v. Lamb*, 163 Wn. App. 614, 631, 262 P.3d 89 (2011), *aff'd in part, rev'd in part*, 175 Wn.2d 121, 285 P.3d 27 (2012). Where reasonable minds could take differing views, the trial court has not abused its discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).

Under ER 401, evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But under ER 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

4

Wyatt argues that Kinney's statement is not relevant because Wyatt was charged with vehicular assault by driving in a reckless manner, not driving while intoxicated. RCW 46.61.522(1)(a), .522(1)(b). But the trial court refused to redact Kinney's statement because it determined that in context, Kinney's statement was a lay description of the type of driving she was observing and reporting. The statement made it more probable that the driver of the white sedan—whomever that may have been—was driving in a reckless manner; therefore, the statement was relevant. Although following the collision it was determined that Wyatt was the driver of the white sedan and was not intoxicated and Wyatt was not charged with vehicular assault by driving while intoxicated, the trial court's decision to not redact Kinney's recorded 911 account of her observations was not unreasonable. Accordingly, we hold that the trial court did not abuse its discretion by declining to redact Kinney's recorded statement.

Wyatt also argues that Kinney's statement should have been excluded because it was highly prejudicial. Wyatt asserts that "[h]owever the statement is characterized, it enabled the jury to hear . . . the indisputably incorrect opinion that Ms. Wyatt was driving while drunk." Br. of Appellant at 23. We disagree.

Wyatt correctly asserts that there was no evidence that Wyatt was intoxicated at the time her car crossed the road and collided with Ziesemer. Because there was no evidence of intoxication, Kinney's recorded statement was merely a summary description of the erratic driving she was reporting. Furthermore, Kinney's testimony was clear that she never had contact with Wyatt, and that she was describing the driving—not the condition of the driver. It is undisputed that there was no evidence to support a conclusion that Wyatt was intoxicated. Wyatt's driving, as specifically described in the rest of Kinney's statement on the 911 tape and during Kinney's testimony, is the type of driving commonly associated with a drunk driver.

Importantly, there was no other mention of intoxication and the State never argued that Wyatt was intoxicated. There is no indication that Kinney's recorded statement would be characterized as anything other than Kinney's preliminary description of the type of driving she observed.

Furthermore, the jury was instructed on the elements of vehicular assault by driving in a reckless manner; the jury instructions did not include any reference to the alternative means of committing vehicular assault by driving while intoxicated. We presume that the jury follows the court's instructions. *State v. Russell*, 125 Wn.2d 24, 84, 747 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). Therefore, we assume that the jury found the essential elements of vehicular assault by driving in a reckless manner, rather than vehicular assault by driving while intoxicated. Given all the facts present in this case, Kinney's brief statement on the 911 recording was not overly prejudicial, and the trial court did not err by declining to redact it.

OFFICER'S EXPERT OPINION

Wyatt asserts that the trial court erred by excluding Trooper Orf's opinion that Wyatt's driving was merely negligent because it was an expert opinion admissible under ER 702, 703, and 704. Wyatt argues that Orf's opinion was relevant because "it would have shed light on a material question of fact: Ms. Wyatt's manner of driving." Br. of Appellant at 28. We disagree. Orf never observed Wyatt's driving and Orf's conclusion that Wyatt's driving was merely negligent is an improper legal conclusion, and the trial court did not err by excluding it.

We review a trial court's decision to admit expert testimony for an abuse of discretion. *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Under ER 702,

6

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

But an expert may not testify to legal conclusions. *State v. Olmedo*, 112 Wn. App. 525, 532, 49 P.3d 960 (2002) (citing *Hyatt v. Sellen Constr. Co.*, 40 Wn. App. 893, 899, 700 P.2d 1164 (1985); *Everett v. Diamond*, 30 Wn. App. 787, 791-92, 638 P.2d 605 (1981)), *review denied*, 148 Wn.2d 1019 (2003). "Improper legal conclusions include testimony that a particular law applies to the case, or testimony that the defendant's conduct violated a particular law." *Olmedo*, 112 Wn. App. at 532 (citing *Hyatt*, 40 Wn. App. at 899).

Here, Wyatt sought to introduce Trooper Orf's opinion that Wyatt's driving was merely negligent. Orf's testimony would have offered an opinion that Wyatt violated the second degree negligent driving statute and, consequently, that Wyatt did not violate the vehicular assault statute. RCW 46.61.525, .522. Because Orf's excluded testimony would have offered an opinion that Wyatt violated a particular law, it is an improper legal opinion. Accordingly, the trial court did not err by excluding Orf's legal opinion about Wyatt's driving.

SUFFICIENCY OF THE EVIDENCE

Wyatt challenges the sufficiency of the evidence supporting the jury's verdict. Wyatt does not challenge the sufficiency of the evidence proving that she drove the vehicle or that Ziesemer suffered substantial bodily harm as a result of the collision. Instead, Wyatt challenges the sufficiency of the evidence proving that she operated her vehicle in a reckless manner. Sufficient evidence supports the jury's verdict finding Wyatt guilty of vehicular assault.

Evidence is sufficient if, when viewed in the light most favorable to the jury's verdict, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable

doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The State charged Wyatt with vehicular assault under RCW 46.61.522(1)(a). To convict Wyatt of vehicular assault, the State was required to prove that Wyatt (1) operated or drove a vehicle, (2) in a reckless manner, and (3) caused substantial bodily harm to another. RCW 46.61.522(1)(a). "[D]riving 'in a reckless manner' means 'driving in a rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005) (quoting *State v. Bowman*, 57 Wn.2d 266, 270, 271, 356 P.2d 999 (1960)).

Wyatt relies on three arguments to support her insufficient evidence claim. First, she alleges that her driving demonstrated caution. Second, she claims that her driving "was consistent with distracted, negligent, or incompetent driving, not reckless driving." Br. of Appellant at 38. Third, she argues that "there was no evidence here of joyriding, excessive speeds, or intoxication." Br. of Appellant at 39.

As an initial matter, we reject Wyatt's first contention that her driving was actually evidence of caution. We view all inferences that can be drawn from the evidence in the light most favorable to the jury's verdict. *Salinas*, 119 Wn.2d at 201. Inferring that Wyatt was exercising caution by driving at speeds that often fluctuated below the speed limit is fundamentally at odds with the jury's verdict finding Wyatt guilty of vehicular assault. Substantial evidence supports the jury's verdict on this point.

Wyatt also contends that her driving was not consistent with reckless driving but rather "distracted, negligent, or incompetent driving." Br. of Appellant at 38. Wyatt attempts to support her argument by demonstrating what she did not do, i.e., joyriding, excessive speeds, or intoxication. But the fact Wyatt's driving could have been worse has no bearing on whether sufficient evidence supports the jury's verdict. Rather, the appropriate inquiry is whether the manner of her driving is sufficient to prove beyond a reasonable doubt that she drove in a rash and heedless manner indifferent to the consequences. *Roggenkamp*, 153 Wn.2d at 622. Here, the State presented evidence that Wyatt drove at fluctuating speeds and swerved in and out of her lane. Wyatt also hit the "sleeper bumps" at the center line and fog line causing her entire vehicle to vibrate. And, ultimately, Wyatt swerved across the entire width of the roadway to hit Ziesemer while he was attempting to avoid a collision by riding his motorcycle on the far right fog line. Based on this evidence, any rational jury could find that Wyatt was driving in a rash and heedless manner indifferent to the consequences at the time of the collision (and for the previous 5.5 miles). Accordingly, her sufficiency of the evidence claim fails.

SAG

In her SAG, Wyatt argues that her right to be free from double jeopardy was violated because the district court had already dismissed her citation for second degree negligent driving related to this accident.[2] Because jeopardy does not attach to civil traffic infractions, Wyatt's right to be free from double jeopardy was not violated.

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST.

---

[2] Wyatt also challenges the decision to reopen the investigation. However, there is no legally enforceable right to the results of an incomplete investigation and we decline to address this claim.

9

amend. V. The double jeopardy clause in the Washington Constitution provides the same protection as the federal constitution. *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000). "For a defendant's double jeopardy right to be violated, three elements must be present: (1) jeopardy must have previously attached, (2) jeopardy must have previously terminated, and (3) the defendant is again being put in jeopardy for the same offense." *State v. McPhee*, 156 Wn. App. 44, 56, 230 P.3d 284 (citing *State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996)), *review denied*, 169 Wn.2d 1028 (2010). The double jeopardy clause "protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). If the penalty is civil, then the defendant does not face multiple criminal punishments. Accordingly, jeopardy does not attach.

To determine whether a punishment is civil, rather than criminal, we first ask whether the legislature "'indicated either expressly or impliedly a preference for one label or the other.'" *In re Det. of Turay*, 139 Wn.2d 379, 416, 986 P.2d 790 (1999) (quoting *Hudson*, 522 U.S. at 99) (internal quotation marks omitted). Even if the legislature has clearly indicated that the nature of the punishment is civil, we inquire whether the punishment is so punitive as to render it criminal rather than civil. *Turay*, 139 Wn.2d at 417 (quoting *Hudson*, 522 U.S. at 100). The defendant "must present a 'high level of proof' that the statutory scheme he is challenging . . . is so punitive that it must be considered criminal and not civil." *Turay*, 139 Wn.2d at 416 (quoting *In re Pers. Restraint of Young*, 122 Wn.2d 1, 20, 857 P.2d 989 (1993)). "'[O]nly the clearest proof will

suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" *Turay*, 139 Wn.2d at 417 (quoting *Hudson*, 522 U.S. at 100) (internal quotation marks omitted).

In 1996, the legislature distinguished between first degree and second degree negligent driving. LAWS OF 1996, ch. 307, § 1. Second degree negligent driving was decriminalized and designated as a traffic infraction. LAWS OF 1996, ch. 307, § 1. Clearly, the legislature intended for second degree negligent driving to be designated as a civil rather than criminal punishment. Accordingly, Wyatt must show that the penalty for second degree negligent driving is so punitive as to render second degree negligent driving criminal, despite the legislature's explicit designation.

Second degree negligent driving is punishable by a $250 fine. RCW 46.61.525(1)(c). A person is not subject to imprisonment for committing second degree negligent driving. *See* RCW 46.61.525(1)(c). Furthermore, the Department of Licensing may not suspend or revoke a person's driver's license solely on the grounds that the driver committed second degree negligent driving. *See* RCW 46.20.291. We do not see any proof, much less clear proof, that would allow us to override the legislature's explicit intent to designate second degree negligent driving a civil traffic infraction. *Turay*, 139 Wn.2d at 417. Accordingly, Wyatt was never subject to multiple criminal punishments as a result of her earlier second degree negligent driving infraction, and jeopardy never attached. Her right to be free of double jeopardy was not violated.

11

No. 42944-6-II

The trial court's evidentiary rulings were not erroneous, sufficient evidence supports the jury's verdict, and Wyatt's right to be free of double jeopardy was not violated. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

FORBES, J.P.T.